337 A.2d 904

COMMONWEALTH of Pennsylvania

v.

Leroy NEWSOME, Appellant.

Supreme Court of Pennsylvania.

Argued April 10, 1975.

Decided May 13, 1975.

Rehearing Denied June 19, 1975.

Jerome E. Furman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., B. H. Levintow, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Leroy Newsome was convicted by a jury in the City of Philadelphia on three bills of indictment charging a weapons offense, conspiracy, and murder in the first degree. After a denial of post-trial motions and the imposition of a sentence of life imprisonment under the murder indictment, this appeal followed.[1]

---

1. Appellant's sentences to a term of years for the firearms violations and conspiracy convictions are to run concurrently with his life sentence. The record does not disclose any appeal taken to the Superior Court from the judgment of sentence imposed on the latter two convictions; therefore, it would appear that appellant is not challenging these judgments. The appeal of the murder conviction is before us pursuant to the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202 (Supp.1974–75).

On September 16, 1972, at about 10:45 P.M., three boys, including the decedent, Nathan Manigo, were walking to their homes in West Philadelphia. They were accosted by three older youths who demanded to know their gang affiliation. When Nathan and his friends denied belonging to any gang, a scuffle ensued. As the younger boys attempted to escape, fourteen-year-old Nathan was fatally shot in the chest.

At 5:05 A.M. the following morning, two police officers arrived at appellant's home and took him to the Police Administration Building, Homicide Headquarters. Leroy Newsome was first contacted by a detective at 6:10 A.M. in an interview room. The detective explained to appellant why he was in custody and gave him his *Miranda* warnings. At that time, appellant indicated a willingness to talk. Approximately two and one-half hours later, between 8:10 A.M. and 8:30 A.M., after a meal, Leroy Newsome made his first oral admissions of his involvement in the shooting. In the course of his statement, appellant admitted that he did the actual shooting. He remained in custody while the officer continued their investigations seeking the whereabouts of the murder weapon. That afternoon between 4:30 and 6:20 P.M., after several polygraph tests, appellant gave a signed, written statement detailing the entire incident.

In this appeal, appellant has raised several allegations of error. We find them all to be without merit. Accordingly we affirm the judgment of sentence.

■ Relying on Pa.R.Crim.P. 118 (now Rule 130), 19 P.S.Appendix, and this Court's decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), appellant contends that the introduction of the oral and written statements into evidence was error. Leroy Newsome's claim of unnecessary delay was raised for the first time in post-trial motions. In view of the fact that appellant's suppression hearing took place one year after

*Commonwealth v. Futch, supra* was decided, this claim was not timely presented, and the objection has been waived. *Commonwealth v. Johnson,* 457 Pa. 554, 327 A. 2d 632 (1974); *Commonwealth v. Williams,* 458 Pa. 319, 326 A.2d 300 (1974); *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296, 300 (1974) (Concurring Opinion, Roberts, J., joined by four members of the Court); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); Pa.R.Crim.P. 304(e).

■ Appellant's next contention is that the trial judge erred in denying defense counsel's request that the Commonwealth's "double barrel" microscope be brought into the courtroom. Appellant asserts that the jury should have been permitted to make independent bullet comparison tests similar to the ones performed by the ballistics expert. Defense counsel wanted the jury to ascertain for themselves whether or not the bullet taken from the decedent's body matched others test-fired from the gun.

Initially we note that the testimony of this witness is allowed under the same evidentiary rules governing other forms of expert testimony. Where as here the subject matter is distinctly related to a science or occupation beyond the knowledge of the average layman, and the witness, Officer Quinn, had been qualified as possessing the skill, knowledge and experience of one trained in the field of ballistics, his testimony concerning the identity of the murder weapon was relevant and admissible. *Commonwealth v. Pierce,* 453 Pa. 313, 309 A.2d 391 (1973); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971); McCormick, Handbook on the Law of Evidence § 13 (2nd ed. 1972).

The Supreme Court of Florida reviewed this issue in a similar context:

"In cases such as these the opinion of the witness is allowed under the rules which govern other forms of

expert testimony. He will be permitted to submit his conclusions where it is shown that by training and experience he is qualified to give an expert opinion on the basis of the ballistic tests which he himself conducted. It is not necessary that the test be conducted in the presence of the jury nor is it required that the expert submit to the jury the actual test materials. It was not error to refuse to compel the state to produce the test bullet." *Roberts v. State*, 164 So.2d 817, 820 (Fla.1964) (and cases cited therein).

See also *Gaines v. State*, 272 So. 919, 921 (Miss.1973); 26 ALR2d 874, 899.

Here, the cost and risks of bringing an expensive microscope into the courthouse for the jury to view specimens that they would not understand, without detailed explanation by the expert, clearly justifies the court's refusal of the request.

■ Finally, appellant has challenged several instances where the trial court refused requested points of charge which included *inter alia* points on opinion evidence, the duty of a juror to decide for himself, reasonable doubt and appellant's election not to testify. A review of the entire record clearly indicates that the requested points were adequately and correctly covered in the basic charge. *Commonwealth v. Walker*, 459 Pa. 12, 326 A.2d 311 (1974); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Chester*, 410 Pa. 45, 188 A.2d 323 (1963). Additionally, a number of the requested points for charge did not reflect an accurate statement of the law.

Judgment of sentence affirmed.

JONES, C. J., took no part in the consideration or decision of this case.